# In the United States Bankruptcy Court
## for the
### Southern District of Georgia
#### Savannah Division

**FILED**

Lucinda B. Rauback, Clerk
United States Bankruptcy Court
Savannah, Georgia
By DReese at 4:47 pm, Apr 02, 2018

In re:                                        )
                                              )     Chapter 7
TREMAR K. WARD,                               )
                                              )     Number <u>17-41129-EJC</u>
                                              )
                        *Debtor.*             )
_____   )  _____
                                              )
TREMAR K. WARD,                               )
                                              )
                        *Plaintiff,*          )     Adversary
                                              )
v.                                            )     Number <u>17-04047-EJC</u>
                                              )
FIDELITY BANK d/b/a FIDELITY                  )
BANK MORTGAGE,                                )
                                              )
                        *Defendant.*          )

## OPINION ON MOTION TO DISMISS COMPLAINT

On November 16, 2017, Tremar K. Ward (the "Plaintiff") filed this adversary proceeding against his mortgage lender, Fidelity Bank (the "Defendant"). The Plaintiff, proceeding *pro se*, alleges that the Defendant "monetized" a promissory note signed by the Plaintiff and used the funds therefrom to finance the Plaintiff's purchase of real property. He contends that the Defendant's conduct discharged his obligation to repay the debt. Based on these allegations, the Plaintiff brings claims against the Defendant under Georgia law and under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* He also seeks a declaratory judgment concerning the Defendant's security interest in the real

property. Before the Court is the Defendant's Motion to Dismiss (adv. dckt. 13) the Complaint (adv. dckt. 1) for failure to state a claim upon which relief can be granted. Although the Court has liberally construed the Plaintiff's *pro se* filings, his Complaint will be dismissed for the reasons set forth below.

## I. JURISDICTION

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a), and the Standing Order of Reference signed by then Chief Judge Anthony A. Alaimo on July 13, 1984. This is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(1).

## II. PROCEDURAL BACKGROUND

The Plaintiff filed a Chapter 7 bankruptcy petition on July 31, 2017. (Dckt. 1). On November 16, 2017, the Plaintiff filed this adversary proceeding against the Defendant, enumerating claims for "action of trespass on the case/trespass quare clausum fregit," "action of trover," "action of covenant," and declaratory judgment. (Adv. Dckt. 1). In a section of his Complaint entitled "Bill of Particulars,"[1] the Plaintiff demands $100,000.00 in compensatory damages and contends that he is entitled to "triple damages of $300,000.00 should a fraudulent claim be found." *Id.* at p. 23. The Plaintiff also seeks "$1,000 per day for time and legal expenses, calculated beginning 21 days after the date of notice to appear." *Id.* at p. 25.

---

[1] A bill of particulars is "[a] formal, detailed statement of the claims or charges brought by a plaintiff or a prosecutor, [usually] filed in response to the defendant's request for a more specific complaint." *Bill of Particulars*, Black's Law Dictionary (10th ed. 2014).

On December 15, 2017, the Defendant filed an Answer. (Adv. Dckt. 6). In the Answer, the only defense asserted by the Defendant is that the Complaint must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Federal Rules") because it fails to state a claim upon which relief may be granted. *Id.* at p. 8. The Defendant also requests attorneys' fees and costs.

On January 26, 2018, the Defendant filed the instant Motion to Dismiss the Plaintiff's Complaint pursuant to Federal Rule 12(b)(6) (adv. dckt. 13), as well as a supporting memorandum of law (adv. dckt. 14). On February 12, 2018, the Plaintiff filed a response. (Adv. Dckt. 17). At a hearing on February 15, 2018, the Defendant's counsel presented oral argument, and the Plaintiff rested on his written response. The matter was taken under advisement and is now ripe for ruling.

## III. THE PLAINTIFF'S ALLEGATIONS

As set forth in the Plaintiff's Complaint, the facts of this case are as follows: On April 30, 2014, the Plaintiff obtained a mortgage loan from the Defendant in the amount of $81,900.00.[2] (Adv. Dckt. 1, p. 7). As evidenced by a promissory note (the "Promissory Note"), the Plaintiff promised to pay the Defendant $391.04 per month beginning on June 1, 2014.[3] *Id.* at p. 41 (Exhibit "1"). The Plaintiff also executed a security deed conveying to

---

[2] The Promissory Note attached to the Complaint as Exhibit 1 lists the amount of the loan as $81,908.00. (Adv. Dckt. 1, p. 41).

[3] Where (as here) the pleadings refer to agreements and other documents, it is proper for the Court to consider the documents as part of the complaint in ruling on motions to dismiss. *Horne v. Potter*, 392 F. App'x. 800, 802 (11th Cir. 2010) (noting that it is proper to consider documents attached to the complaint or incorporated by reference, as well as any undisputed documents attached to the motions to dismiss that are central to the debtor's claim).

the Defendant title to real property commonly known as 126 Greenbriar Court, Savannah, Chatham County, Georgia 31419 (the "Property"). *Id.* at p. 44 ("Exhibit 2").

In the Complaint, the Plaintiff alleges that the Defendant engaged in certain fraudulent conduct in connection with the April 30, 2014 loan transaction. These allegations are somewhat confusing. According to the Complaint, the Defendant did not "finance the purchase of the Subject Property with its own money." *Id.* at p. 9. Instead, the Defendant "endorsed the Note 'Pay to the Order of' and left it blank." *Id.* The Defendant then "deposited the Note into a transaction account in [the Plaintiff's] name[,] . . . wrote a check off of that account to pay the seller of the Subject Property," and "sold the Note through the Securitization process to fund [the Plaintiff's] deposit account," which the Defendant "unlawfully depleted." *Id.* at p. 11.

In his response to the Defendant's Motion to Dismiss, the Plaintiff clarifies his allegations. There, he explains that "banks endorse the back of the Promissory Note like a check and place the funds on their books as a debit." (Adv. Dckt. 17, p. 6). Then, "because they use [Generally Accepted Accounting Principles], they place an entry on the credit side of the ledger[,] thereby making the man or women [sic] who signed the Promissory Note the Creditor of the funds." *Id.* In other words, the Defendant financed the purchase of the Property with money the Defendant "created when it monetized [the] Promissory Note." *Id.* at p. 5.

According to the Plaintiff, the Defendant's conduct took place without his knowledge or consent. At the time of the loan transaction, the Plaintiff did not know "that [his] Promissory Note was the same as cash or a cashier's check." *Id.* at p. 7. The Plaintiff

learned of the Defendant's alleged actions when he "saw a video on the Internet of a speech recorded by a member of the Federal Reserve Board who explained this fraudulent scheme that is practiced by so many banks and mortgage lenders in the residential mortgage lending business." (Adv. Dckt. 1, p. 11).

After the April 30, 2014 loan transaction, the Defendant allegedly used the United States Postal Service "to collect on a [f]raudulent debt," made various "false claims exceeding their jurisdiction," and "charged [the Plaintiff] for mortgage insurance . . . ."[4] (Adv. Dckt. 1, p. 21). The Plaintiff further alleges that the Defendant "used threats of intimidation, double recovery, and extortion using the mail." (Adv. Dckt. 1, p. 21). One such communication is a letter from the Defendant's counsel dated February 10, 2017. (Adv. Dckt. 1, p. 64) (Exhibit "4"). Pursuant to § 1692g(a) of the FDCPA, the letter notified the Plaintiff that the amount of the debt was $83,562.88, identified the creditor as the Defendant, and informed the Plaintiff of his right to dispute the validity of the debt within 30 days. (Adv. Dckt. 1, p. 64) (Exhibit "4").

Subsequently, the Plaintiff drafted a document entitled "Notice of Default Judgment." (Adv. Dckt. 1, pp. 52-62) (Exhibit "4"). This document, dated March 31, 2017, is addressed to the Defendant's counsel and cc'd to an assortment of federal, State of Georgia, and ecclesiastical officials. (Adv. Dckt. 1, pp. 57-58). It provides in relevant part as follows:

---

[4] The Plaintiff appears to allege that the Defendant filed a claim under the Plaintiff's primary mortgage insurance policy. (Adv. Dckt. 1, p. 21). At the February 15, 2018 hearing, the Defendant's counsel represented that the Defendant has not filed any such claim and would not do so until *after* foreclosure. In any event, the Plaintiff does not allege any further facts in the Complaint that would suggest the Defendant has improperly handled any mortgage insurance.

I, as man, Tremar Kenard Ward, Authorized Representative to the Legal Entity/Artificial Person "TREMAR K WARD," conjoined with all the derivatives thereof, have sent (via Certified United States Mail) this formal Default Judgment in the contested matters of the above and to address any related former Claims or Actions initiated by you and/or held in your Trusted Responsibility. Upon request, any and all Trustees are accountable to Report in fully [sic] to the one whose Trust they hold.

I am in receipt of your February 10, 2017 notice (see Exhibit 1). This letter is to notify you, your firm, your servicing company and the mortgage company claiming ownership of this alleged loan and note, that I am exercising my rights under the "Fair Debt Collections [sic] Practices Act" as codified at 15 U.S.C. § 1692, which stipulates that a debt collector must, if requested, provide validation of the alleged debt, i.e. validate the debt, per the "Fair Debt Collections [sic] Practices Act," "FDCPA." The debt collector (Foreclosure Attorney, Bank, Alleged Lender) is mandated under "FDCPA" to cease and desist ALL collection activity until validation of the alleged debt is provided.

. . .

The facts [sic] that this lawful Request had not been Honored nor answered, this Default Judgment is being claimed against you, H. Palmer Proctor Jr - President, Thomas E Brock - Founding Partner, Gregory A Scott - Founding Partner and all other parties of interest relating to this matter.

. . .

*Id.* at pp. 52-62. According to the Plaintiff, this document demonstrates that his debt to the Defendant "has been paid in full and discharged a second time . . . ." (Adv. Dckt. 1, pp. 11-13).[5]

The Plaintiff alleges that the Defendant's fraudulent conduct "reached epic proportions on or about July 23, 2017[,] with the mailing of a Notice of Foreclosure Sale,"

---

[5] As further evidence that the debt was "discharged a second time," the Plaintiff cites a document attached to the Complaint as Exhibit "5" and entitled "Affidavit of Fact/Truth of Default Judgment." (Adv. Dckt. 1, p. 69). In this document, the Plaintiff sets forth a litany of conclusory allegations concerning the Defendant's conduct in connection with the April 30, 2014 loan transaction. *Id.*

which is attached to the Complaint as Exhibit "3." (Adv. Dckt. 1, p. 21). The document attached as Exhibit "3" is a solicitation letter sent to the Plaintiff by DVH Law Group, LLC, *not* by the Defendant's counsel, Brock and Scott PLLC. (Adv. Dckt. 1, p. 51) (Exhibit "3"). The letter, dated July 21, 2017, notified the Plaintiff that the Defendant's counsel scheduled a foreclosure sale for August 1, 2017, and suggested that the Plaintiff call DVH Law Group, LLC "**IMMEDIATELY** for a **FREE** case evaluation." *Id.* (emphasis in original).[6] The Plaintiff does not allege that the scheduled foreclosure sale actually took place.[7]

## IV. LEGAL STANDARD ON MOTION TO DISMISS

The Defendant contends that the Plaintiff's Complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule 12(b)(6), made applicable to this adversary proceeding by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"). The Defendant, however, improperly filed the instant Motion to Dismiss under Federal Rule 12(b)(6) after first raising the same defense in its Answer. "A

---

[6] The Plaintiff's confusion about this letter is understandable: It gives the reader the false impression that it *is* a notice of foreclosure sale. The letter begins as follows: "You are hereby notified that Brock & Scott, PLLC, a Foreclosure Law Firm and Debt Collector, has been hired by Fidelity Bank, or your current loan servicer . . . to sell your home to the highest bidder at the Chatham County courthouse steps at 10:00 AM on 8/1/2017 in a Foreclosure Sale." (Adv. Dckt. 1, p. 51). Fortunately, this case does not require the Court to decide whether DVH Law Group, LLC violated the Georgia Rules of Professional Conduct. *See* Rule 7.1 ("A lawyer may advertise through . . . written communication not involving personal contact so long as the communication is not false, fraudulent, deceptive, or misleading.").

[7] At the February 15, 2018 hearing, the Defendant's counsel represented that the foreclosure sale was canceled when the Plaintiff filed his bankruptcy petition on July 31, 2017. On March 21, 2018, the Defendant filed a Motion for Relief from Automatic Stay (dckt. 76) in the Plaintiff's bankruptcy case.

AO 72A
(Rev. 8/82)

party's Rule 12(b)(6) motion to dismiss for failure to state a claim is a nullity if the party files that motion after raising the defense of failure to state a claim in its answer." *Whitehurst v. Wal-Mart Stores East, L.P.*, 329 F. App'x 206, 208 (11th Cir. 2008). *See also Boone v. Hornsby (In re Hornsby)*, 15-04057, 2016 WL 5107057, at *1 n.2 (Bankr. S.D. Ga. Sept. 19, 2016) (Dalis, J.) ("[A] motion under Rule 12(b)(6) should be filed instead of, not in addition to, an answer."). Thus, the Defendant's improperly filed Motion to Dismiss is a nullity. Nevertheless, the Court will exercise its discretion to "construe the Rule 12(b)(6) motion as one seeking judgment on the pleadings under Rule 12(c)." *Whitehurst*, 329 F. App'x at 208.

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed–but early enough not to delay trial–a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273 (11th Cir. 2008) (citing *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)). A motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Dixon v. Georgia Dep't of Pub. Safety*, 135 F. Supp. 3d 1362, 1369-70 (S.D. Ga. 2015) (Wood, J.).

A complaint should be dismissed under Federal Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible claim for relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). Under Federal Rule of Civil Procedure 8(a)(2),[8] a plaintiff need only provide "a short and plain statement of the claim showing that

---

[8]Federal Rule 8(a)(2) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7008.

the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In ruling on a motion to dismiss, the court must accept factual allegations as true and construe them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 678. However, allegations in the form of legal conclusions, as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The rule "does not impose a probability requirement at the pleading stage," but instead "asks for more than a sheer possibility that a defendant has acted unlawfully." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule 8(a)(2) because it has merely "alleged" but not "show[n] . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679.

As a general rule, *pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and must, therefore, be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is 'to be liberally construed,' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'") (internal citations omitted). However, "the leniency accorded *pro se* litigants does not give a court license to serve as *de facto* counsel for a party or to rewrite an otherwise deficient pleading to sustain an action." *Matthews, Wilson & Matthews, Inc. v. Capital City Bank*, 614 F. App'x 969, 969 n.1 (11th Cir. 2015) (citing *GJR*

*Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled in part on other grounds by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010)).


# V. DISCUSSION

As set forth above, the Plaintiff enumerates claims for "action of trespass on the case"/"trespass quare clausum fregit," "action of trover," "action of covenant," and declaratory judgment.[9] Having liberally construed the Complaint, the Court finds that the Plaintiff also raises a claim under the FDCPA.[10] The Court will address each of the Plaintiff's claims in turn.

## A. "Trespass on the Case" and "Trespass Quare Clausum Fregit"

The Plaintiff's first claim is entitled "Action of Trespass on the Case, Trespass Quare Clausum Fregit." (Adv. Dckt. 1, p. 25). He contends that "Defendant Fidelity continues to trespass on [his] property by demanding payment of a debt which has already

---

[9] The Plaintiff's Complaint is a quintessential "shotgun pleading" that fails to give the Defendant adequate notice of the claims against it and the grounds upon which each claim rests. Specifically, the Complaint "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). It is also "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* For example, the Complaint contains vague allegations that the Defendant used the United States Postal Service for purposes of "intimidation" and "extortion." (Adv. Dckt. 1, p. 21). Although the Complaint is an impermissible shotgun pleading, the Court will not dismiss it on this basis.

[10] In his response to the Defendant's Motion to Dismiss, the Plaintiff contends that the Defendant violated unspecified "duties" under the Uniform Commercial Code ("UCC"), "other commercial law," the Real Estate Settlement Procedures Act ("RESPA"), and "common sense." (Adv. Dckt. 17, p. 9). In his Complaint, however, the Plaintiff did not remotely hint at any such claims. The Court will not construe any additional claims based on such vague, conclusory allegations first articulated in a response to a motion to dismiss.

been paid in full" and that "the defendant has unlawfully and wrongfully trespassed upon the real estate of the plaintiff." (Adv. Dckt. 1, p. 25-27). Because "trespass on the case" and "trespass quare clausum fregit" are two different concepts, the Court will address them separately. The Court finds that the Plaintiff's trespass claims must be dismissed.

"'Trespass on the case' is an archaic reference to legal history no longer used to address a cognizable wrong." *Bochenski v. Hollander*, No. JKB-16-7, 2016 WL 241423, at *2 (D. Md. Jan. 20, 2016). One district court has described it as an "an old common law cause of action, the purpose of which was 'to supply a remedy where the other forms of [trespass] actions were not applicable.'"[11] *Scheuering v. United States*, No. 14-cv-932 (NSR), 2014 WL 6865727, at *5 (S.D.N.Y. Dec. 4, 2014) (quoting *Socony-Vacuum Oil Co. v. Baily*, 202 Misc. 364, 365-66, 109 N.Y.S.2d 799 (N.Y. Sup. Ct. Cattaraugus Cnty. 1952)). Trespass on the case is an "outdated mode of recovery." *Scheuering*, No. 14-cv-932 (NSR), 2014 WL 6865727, at *5. It "does not stand as an independent cause of action." *Martin-McFarlane v. City of Philadelphia*, — F. Supp. 3d —, 2017 WL 4844831, at *7 (E.D. Pa. May 5, 2017). Accordingly, the Plaintiff's claim for trespass on the case must be dismissed pursuant to Federal Rule 12(c).

"Trespass quare clausum fregit" is an archaic term for trespass to real property. *See Laslie v. Gragg Lumber Co.*, 184 Ga. 794, 798-99, 193 S.E. 763 (1937) (defining "trespass quare clausum fregit" as "an injury done to the realty"); *McConnell Bros. v.*

---

[11] *Black's Law Dictionary* defines "trespass on the case" as "a lawsuit to recover damages that are not the immediate result of a wrongful act but rather a later consequence." *Trespass on the Case*, Black's Law Dictionary (10th ed. 2014). "It was the precursor to a variety of modern-day tort claims, including negligence, nuisance, and business torts." *Id.*

*Slappey*, 134 Ga. 95, 67 S.E. 440, 445 (1910) ("[I]n an action of trespass quare clausum fregit . . . the complaint is merely for injury to the freehold . . . ."). *See also* Charles R. Adams, III, *Georgia Law of Torts* § 2:5 (2017 ed.) ("The typical trespass involves an entry or intrusion upon the land of another–a 'breaking of the close' ('quare clausum fregit') in the parlance of common-law pleading . . . ."). Under Georgia law, trespass is defined as "any wrongful, continuing interference with a right to the exclusive use and benefit of a property right." *LN West Paces Ferry Assoc., LLC v. McDonald*, 306 Ga. App. 641, 643, 703 S.E.2d 85 (2010) (quoting *Tingle v. Jones*, 249 Ga. App. 654, 656, 549 S.E.2d 477 (2001)). Here, the Plaintiff's Complaint contains no allegations that the Defendant wrongfully and continuously interfered with his right to the exclusive use and benefit of the Property.[12] Thus, to the extent that the Plaintiff seeks to raise a claim for trespass to realty, such claim must be dismissed pursuant to Federal Rule 12(c).[13]

---

[12] Although the Plaintiff does not explicitly rely on this theory, wrongful foreclosure has been held to constitute an actionable trespass under Georgia law. *See Ashley v. Wilson*, 61 Ga. 297, 1878 WL 2867 (1878). To support an action for wrongful foreclosure, however, a claimant must show that a foreclosure sale actually took place. *Humphrey v. JP Morgan Chase Bank, N.A.*, 337 Ga. App. 331, 332-33, 787 S.E.2d 303 (2016). In this case, the Plaintiff does not allege that any foreclosure sale has taken place, but merely that the Defendant *intends* to foreclose on the Property. *See* Adv. Dckt. 1, p. 21 (referring to the Defendant's "*planned* foreclosure") (emphasis added). Thus, the Plaintiff could not state a claim for trespass under a theory of wrongful foreclosure.

[13] Even if the Plaintiff *did* state claims for trespass on the case and trespass quare clausum fregit, it is not clear whether this Court would have jurisdiction to issue a final judgment on such claims. *See Stern v. Marshall*, 564 U.S. 462, 503 (2011) (holding bankruptcy court lacked constitutional authority to enter final judgment on state law counterclaim); *Flyboy Aviation Prop., LLC v. Franck (In re Flyboy Aviation Prop., LLC)*, 525 B.R. 510, 517 (Bankr. N.D. Ga. 2015) (explaining that trespass claims are "non-core, related-to matters" pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157). Both trespass on the case and trespass quare clausum fregit are matters of state tort law. *See Edwards v. Nevada, et al.*, 2:17-cv-00201-JAD-VCF, 2018 WL 523361, at *1 (D. Nev. Jan. 22, 2018) ("While I am not quite sure what 'trespass on the case' is, I am sure that it is not a claim arising under federal law."); *Evans v.*

B. <u>Trover</u>

   The Plaintiff's Second Claim is entitled "Action of Trover." (Adv. Dckt. 1, p. 29). He appears to contend that the Defendant filed a successful claim pursuant to the Plaintiff's private mortgage insurance policy. (Adv. Dckt. 1, p. 31). The Defendant having already been paid under the mortgage insurance policy, the planned foreclosure would "give [the Defendant] flawed and defective and fraudulent title to the [P]roperty as a stranger to the transaction," and thus the Defendant is "the causal agent of the trover . . . ." (Adv. Dckt. 1, p. 31). The Court disagrees.

   Under Georgia law, conversion is a tort, for which the action of trover will lie.[14] "The gist of [a trover] action is conversion." *Bo Phillips Co., Inc. v. R.L. King Prop., LLC*, 336 Ga. App. 705, 707 n.3, 783 S.E.2d 445 (2016) (quoting *Powers v. Wren*, 198 Ga. 316, 319, 31 S.E.2d 713 (1944)). Conversion is "an unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation." *Bo Phillips Co., Inc.*, 336 Ga. App. at 707 (quoting *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259, 261, 356 S.E.2d 877 (1987)). "An action for conversion and trover will not lie to recover real property." *Levenson v. Word*, 294 Ga. App. 104, 105 n.2, 668 S.E.2d 763 (2008) (citing *Adams v. Chamberlain*, 54 Ga. App. 459,

---

*California*, No. 17-cv-00531-BAS-BGS, 2017 WL 3605378, at *3 (S.D. Cal. Aug. 21, 2017) (Trespass and trespass on the case "are common law theories, not federal claims."). The Defendant, however, did not raise lack of subject matter jurisdiction as a defense, and thus the Court will not dismiss the Plaintiff's claims on this basis.

  [14] Like the Plaintiff's trespass claim, trover is a state law cause of action over which the Court may not have jurisdiction to issue a final judgment.

460, 188 S.E. 550 (1936)). In this case, the Plaintiff seeks to prevent the Defendant from foreclosing on real property. His Complaint contains no allegations whatsoever that the Defendant has converted any of his personal property. Accordingly, the Plaintiff fails to state a claim for trover pursuant to Federal Rule 12(c).[15]

## C. Action of Covenant

The Plaintiff's third claim is entitled "Action of Covenant." (Adv. Dckt. 1, p. 33). He requests "that the Mortgage be enforced so that the clause at Section 7 be enforced and the insurance paid to the Defendant for Primary Mortgage Insurance and Pool insurance be and is accounted for to offset the alleged debt that they claim that they have the right to collect, although it is unverified." (Adv. Dckt. 1, p. 33). In the alternative, "[i]f the Defendant is somehow able to confirm that it has a verified claim," then the Plaintiff requests "that claim be offset by the insurance that was collected from the PMI insurance policy that [he] was billed for and which [he] paid." *Id.*

An "action of covenant" is an archaic term for "[a] lawsuit seeking damages or the specific performance of a contract under seal." *Action of Covenant*, Black's Law Dictionary (10th ed. 2014). It was developed in the 13th Century. *Fort Motor Co. v. Carter*, 239 Ga. 657, 664, 238 S.E.2d 361 (1977) (Hill, J., dissenting). An action of covenant could

---

[15] The Plaintiff also fails to establish all the elements of conversion. "To establish a *prima facie* case for conversion, 'the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property.'" *Bo Phillips Co., Inc.*, 336 Ga. App. at 707 (quoting *Trey Inman & Assocs., P.C. v. Bank of America, N.A.*, 306 Ga. App. 451, 457, 702 S.E.2d 711 (2010)). Here, the Plaintiff does not allege that the Defendant has possession of the Property, that he has demanded return of the Property, or that the Defendant has refused to return the Property. Thus, even if an action of trover *was* appropriate to recover real property, the Plaintiff's claim would be dismissed.

not "be maintained except against a person who by him- or herself, or some other person acting on his or her behalf, has executed a deed under seal or who has by deed agreed to do a certain thing." 1 Am. Jur. 2d *Actions* § 21 (2018). It is doubtful that an "action of covenant" remains a viable cause of action under Georgia law.[16]

  Nevertheless, the Court will liberally construe the Plaintiff's Complaint. To the extent that the Plaintiff seeks to raise a claim for breach of contract, such claim fails.[17] "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." *Norton v. Budget Rent A Car System, Inc.*, 307 Ga. App. 501, 502, 705 S.E.2d 305 (2010) (quoting *Kuritzky v. Emory Univ.*, 294 Ga. App. 370, 371, 669 S.E.2d 179 (2008)). The vague allegations in the Complaint are not sufficient to enable the Court to draw a reasonable inference that the Defendant breached its contract with the Plaintiff. Indeed, the Plaintiff does not identify which contractual provision the Defendant allegedly breached. He requests that the Court deduct from the debt the primary mortgage insurance payments allegedly received by the Defendant, but he cites only "the clause at Section 7." (Adv. Dckt. 1, p. 33). Neither Section 7 of the Promissory Note nor Section 7 of the Security Deed has anything to do with primary mortgage insurance.[18] Because the Plaintiff does not  sufficiently allege

---

[16] The most recent Georgia appellate decision involving an action of covenant appears to be *Atlanta Consol. St. Ry. Co. v. Jackson*, 108 Ga. 364, 34 S.E. 184 (1899).

[17] Like the Plaintiff's claims for trespass and trover, breach of contract is a state law cause of action over which the Court may not have jurisdiction to issue a final judgment.

[18] Section 7 of the Promissory Note, entitled "Waivers," states that "Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. 'Presentment' means the right to require the Lender to demand payment of amounts

that any breach of contract took place, his claim for "action of covenant" must be dismissed pursuant to Federal Rule 12(c).

D. FDCPA Claim

In the Complaint, the Plaintiff does not explicitly set forth a claim pursuant to the FDCPA. However, he does refer to the document attached as Exhibit "4," entitled "Notice of Default Judgment," in which he demanded that the Defendant verify his debt as required by the FDCPA. (Adv. Dckt. 1, pp. 11-13, 53). He alleges that the Defendant "did not deny or rebut" this document, "nor did it provide controverting affidavits . . . ." (Adv. Dckt. 1, p. 13). According to the Plaintiff, the Defendant's failure to verify the debt "amounts to . . . tacit agreement that [the Plaintiff's] mortgage debt is paid in full . . . ." (Adv. Dckt. 1, p. 13). Liberally construing the Complaint, the Court finds that the Plaintiff seeks to raise a claim under the FDCPA. Nevertheless, such claim must be dismissed under Federal Rule 12(c).

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1271 (11th Cir. 2016) (quoting 15 U.S.C. § 1692(e)). In furtherance of

---

due. 'Notice of dishonor' means the right to require Lender to give notice to other persons that amounts due have not been paid." (Adv. Dckt. 1, p. 42) (Exhibit "1"). Section 7 of the Security Deed, entitled "Charges to Borrower and Protection of Lender's Rights in the Property," requires the Plaintiff to "pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2 . . . directly to the entity which is owed the payment." (Adv. Dckt. 1, p. 46) (Exhibit "2").

those goals, § 1692g of the FDCPA regulates the contents of a "notice of debt" and sets forth certain procedures for handling disputed debts. *Id.* at 1271-72.

The relevant provisions of § 1692g are as follows:

**(a) Notice of debt; contents**

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing–

**(1)** the amount of the debt;

**(2)** the name of the creditor to whom the debt is owed;

**(3)** a statement that unless the consumer within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

**(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

**(5)** a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a). Here, the Defendant's counsel complied with the requirements of § 1692g(a) in its letter to the Plaintiff dated February 10, 2017. (Adv. Dckt. 1, p. 64). In the Plaintiff's "Notice of Default Judgment" dated March 31, 2017, he demanded that the Defendant verify the debt pursuant to § 1692g(b). (Adv. Dckt. 1, p. 53) (Exhibit "4"). Section 1692g(b) provides as follows:

**(b) Disputed debts**

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). According to the Plaintiff, the Defendant never provided the requested verification. (Adv. Dckt. 1, p. 13).

To state a claim under the FDCPA, a plaintiff must establish each of the following elements: (1) that he was the object of "collection activity" arising from "consumer debt"; (2) that the defendant qualifies as a "debt collector" under the FDCPA; and (3) that the defendant engaged in an act or omission prohibited by the FDCPA. *Darrisaw v. Pennsylvania Higher Educ. Assistance Agency (PHEAA)*, CV 316-082, 2017 WL 1377719, at *2 (S.D. Ga. Apr. 11, 2017) (Bowen, J.). Here, the Plaintiff arguably alleges that he was the object of collection activity in connection with a consumer debt.[19] However, he fails to

---

[19] In an unpublished opinion, the Eleventh Circuit Court of Appeals has held that "foreclosing on a home is not debt collection for purposes of § 1692g . . . ." *Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009) (per curiam). Under the *Warren* rule, the Plaintiff could not establish the "collection activity" element based on the Defendant's planned foreclosure sale of his home. In a subsequent published opinion, however, the Eleventh Circuit explained that "[a] communication related to debt collection does not become unrelated to debt collection simply because it also relates to the enforcement of a security interest." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1217-18 (11th Cir. 2012) (holding law firm's dunning letter was an attempt to enforce a security interest *and* to collect a debt). As one district court has explained, "the *Warren* rule has been undermined, if not overturned" by the opinion in *Reese*, which "is published and thus, unlike *Warren*, is binding on this court." *Deutsche Bank Trust Co. Americas v. Garst*, 989 F. Supp. 2d 1194, 1200 (N.D. Ala. 2013). Other district courts, however, continue to apply the *Warren* rule. *See, e.g., Strickland v. Deutsche Bank Trust Co. Americas*, No. 5:18-CV-3 (CAR), 2018 WL

allege that Defendant Fidelity was a debt collector or that the Defendant engaged in any act or omission prohibited by the FDCPA.

First, the Plaintiff fails to allege that the Defendant is a debt collector. To state an FDCPA claim, the Plaintiff must plausibly allege sufficient facts to enable the Court to draw a reasonable inference that the Defendant meets the FDCPA's definition of "debt collector." *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 658-59 (11th Cir. 2017) (per curiam). A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). In other words, the FDCPA "applies only to professional debt-collectors." *Crawford v. LVNV Funding, LLC*, 758 F.3d 1254, 1258 n.3 (11th Cir. 2014). "Unlike debt collectors, creditors typically are not subject to the FDCPA." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313-14 (11th Cir. 2015). A creditor is "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Here, the Defendant is the originating creditor, and the Complaint contains no factual content that would enable the Court to infer that the

---

715408, at *5 (M.D. Ga. Feb. 5, 2018) ("The law is clear that exercising or threatening to exercise a security interest in property through foreclosure is not considered 'debt collection activity' for purposes of the FDCPA . . . ."); *DeBoskey v. SunTrust Mortgage, Inc.*, No. 8:14-cv-1778-MSS-TGW, 2017 WL 4083557, at *4 (M.D. Fla. Sept. 14, 2017) ("It is well settled that a foreclosure action, in and of itself, is not debt collection activity for the purposes of the FDCPA . . . ."). Because the Plaintiff fails to allege the remaining elements necessary to establish an FDCPA claim, the Court need not decide whether he sufficiently alleges that he was the object of collection activity.

Defendant is a debt collector under the FDCPA.[20]

Second, even if the Defendant is a debt collector, § 1692g(b) does not necessarily require verification of debt when requested by a consumer. Rather, it "requires only that a debt collector *cease collection* of the debt if it is disputed, unless the debt collector verifies the debt . . . ." *Hepsen v. Resurgent Capital Serv., LP*, 383 F. App'x 877, 881-82 (11th Cir. 2010) (per curiam) (emphasis in original). *See also Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011, 1014 (11th Cir. 2004) ("The plain language of Section 1692g(b) mandates that a debt collector 'cease collection of the debt' once verification is requested."). Thus, § 1692g(b) does not require a debt collector "to take some other affirmative step if the consumer disputes the debt." *Hepsen*, 383 F. App'x at 881-82. Here, the Plaintiff fails to allege that the Defendant took any actions to collect on the debt after receiving his "Notice of Default Judgment" dated March 31, 2017. He alleges only that the Defendant "did not deny or rebut" the "Notice of Default." (Adv. Dckt. 1, p. 13). These allegations are insufficient to state a claim under § 1692g(b).

Third, even if the Defendant is a debt collector and even if it did attempt to collect on the debt after receiving the Plaintiff's "Notice of Default Judgment," the Plaintiff fails to allege that he complied with the timing requirements of § 1692g(b). "[T]o sustain a

---

[20] The February 10, 2017 letter was sent by the Defendant's counsel, not by the Defendant itself. The Defendant's counsel is not a defendant in this adversary proceeding. Even if the Defendant's counsel is a debt collector, the Defendant is not vicariously liable under the FDCPA for its counsel's actions. Courts have held that an entity that does not meet the definition of "debt collector" cannot be held vicariously liable for unlawful collection actions taken on its behalf by an entity that *is* a debt collector. *Bent v. Smith, Dean & Assoc., Inc.*, No. 3:11-cv-66-J-TEM, 2011 WL 2746847, at *3 (M.D. Fla. July 14, 2011) (citing *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996)).

SAO 72A
(Rev. 8/82)

claim pursuant to § 1692g(b), the consumer must dispute the debt or any portion thereof within 30 days of receipt of the initial communication from the debt collector." *Abdullah v. Ocwen Loan Servicing, Inc.*, No. 5:12-cv-369 (CAR), 2014 WL 4851760, at *5 (M.D. Ga. Sept. 29, 2014). Here, the Complaint contains no allegations that the Plaintiff disputed the debt within 30 days of receiving the initial communication from the Defendant. The notice sent to the Plaintiff pursuant to § 1692g(a) is dated February 10, 2017. (Adv. Dckt. 1, p. 64). The Plaintiff's "Notice of Default Judgment" (containing his demand for debt verification) is dated March 31, 2017, more than 30 days after February 10, 2017. (Adv. Dckt. 1, p. 52). Although it is possible that the Plaintiff received the February 10, 2017 notice within the 30-day period before he sent the "Notice of Default Judgment," he does not allege sufficient facts to support this inference. For all of these reasons, the Plaintiff's FDCPA claim must be dismissed pursuant to Federal Rule 12(c).

E. Declaratory Judgment

Finally, the Plaintiff requests that the Court declare (1) that the Defendant "had a duty to rebut the documents listed in [Paragraph 14 of the Complaint] and that its failure to fulfill that duty constitutes its tacit approval, consent, [and] acquiescence to the facts stated in the documents"; (2) that "any mortgage debt on [his] property has been fully paid and discharged"; (3) that "any attempt by [the Defendant] to foreclosure [sic] against the Subject Property is wrongful and the same is void"; (4) that the Plaintiff is "the sole owner of the Subject Property"; and (5) that "any liens and/or encumbrances against the Subject Property" are void. (Adv. Dckt. 1, p. 35).

Bankruptcy Rule 7001 provides that "a proceeding to determine the validity, priority, or extent of a lien or other interest in property," with certain exceptions not applicable here, is an adversary proceeding. Fed. R. Bankr. P. 7001(2). The same Bankruptcy Rule contemplates that "a proceeding to obtain a declaratory judgment relating to any of the foregoing" may be brought as an adversary proceeding. Fed. R. Bankr. P. 7001(9). The Court construes the Plaintiff's declaratory judgment claim as a claim to determine the validity, priority, or extent of the Defendant's interest in the Property.

With one exception,[21] the issues on which the Plaintiff seeks a declaratory judgment are all variations of his theory that the Defendant "created" money by monetizing his Promissory Note and then loaned that money to the Plaintiff to finance the purchase of the Property. (Adv. Dckt. 17, p. 4). This "vapor money" theory is based on the Plaintiff's faulty understanding of negotiable instruments. As one district court has described the theory:

> Plaintiff alleges that the promissory note he executed is the equivalent of "money" that he gave to the bank. He contends that [the lender] took his "money," *i.e.*, the promissory note, deposited it into its own account without his permission, listed it as an "asset" on its ledger entries, and then essentially lent his own money back to him. He contends that [the lender] . . . "created" the money through its bookkeeping procedures.

*Demmler v. Bank One NA*, No. 2:05-CV-322, 2006 WL 640499, at *3-4 (S.D. Ohio March 9, 2006) (rejecting this "patently ludicrous argument"). Every federal court that has considered this theory has rejected it. *See Winston v. 360 Mortg. Grp., LLC*, 1:17-cv-1186-WSD, 2017 WL 4356918, at *4 (N.D. Ga. 2017) (vapor money theory "has been consistently

---

[21] The first issue on which the Plaintiff seeks a declaratory judgment, whether the Defendant had a duty to verify the debt, is merely a rehash of his FDCPA claim, which the Court dismissed above.

AO 72A
(Rev. 8/82)

rejected by this Court and other courts throughout the country"); *Kalpak v. EMC Mortg. Corp.*, No. 3:11-cv-49 (CAR), 2011 WL 2711182, at *3 (M.D. Ga. July 13, 2011) ("Courts both in the Eleventh Circuit and across the county have uniformly rejected claims based on this 'vapor money' theory, finding they are not actionable as a matter of law."); *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 213-14 (D. Conn. 2010) ("[T]hese theories have been universally and emphatically rejected by numerous federal courts for at least the last 25 years."). The reason courts reject this theory is simple: "While a promissory note may be a negotiable instrument, the note itself is not 'money.' It is nothing more than the acknowledgment of a debt and a promise to repay the debt at some date in the future." *Demmler*, 2006 WL 640499, at *4. Accordingly, the Court declines to issue a declaratory judgment in this case.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the Plaintiff's Complaint must be dismissed pursuant to Federal Rule 12(c). A separate Order will be entered contemporaneously with this Opinion.

Dated at Savannah, Georgia, this 2nd day of April, 2018.

Edward J. Coleman, III, Chief Judge
United States Bankruptcy Court
Southern District of Georgia